IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Lionel P. Trepanier, personally and also for his daughter, G.T., <br>     *Plaintiffs*, <br> v. <br><br> CITY OF BLUE ISLAND, FRANK PODBIELNIAK, Blue Island Police Department Star 321, DAVID ANDERSON Blue Island Police Department Star 151, CRAIG KINCAID, Blue Island Police Watch Commander. <br>     *Defendants*. | ) <br> ) <br> ) <br> ) No. 03-C-7433 <br> ) <br> ) Honorable David H. Coar <br> ) <br> ) <br> ) <br> ) <br> ) |

**MEMORANDUM OPINION AND ORDER**

Before this court is a motion for summary judgment on all counts filed by defendants of Blue Island, Frank Podbielniak, and David Anderson ("Defendants") against Lionel Trepanier ("Plaintiff" or "Trepanier"), pursuant to Federal Rule of Civil Procedure 56. Trepanier filed this action in October 2003. On or about September 13, 2005, Trepanier filed his First Corrected Amended Complaint ("Complaint") containing five counts. Count I states a § 1983 claim that the conduct of Officer Anderson and Corporal Podbielniak violated Trepanier's Fourth Amendment rights because they did not have probable cause to arrest him. Count II alleges a § 1983 claim that Defendants violated Trepanier's First Amendment rights because he would not have been arrested and charged but for the fact that he had previously settled a lawsuit against defendants and had made a complaint against Sgt. Craig Kincaid ("Sgt. Kincaid"). Count III alleges a § 1983 claim that Defendants violated G.T.'s Fourth Amendment right to privacy and freedom from unreasonable search and seizures. Count IV states a state law claim for malicious

1

prosecution of Trepanier.  Count V is a state law claim alleging that Defendants wrongfully invaded Plaintiff G.T.'s privacy.  This motion has been fully briefed and will be addressed in this opinion.  For the reasons set forth below, Defendants' motion is GRANTED in part and DENIED in part.

## FACTS[1]

Plaintiff Lionel Trepanier is the father of Plaintiff G.T.  ("Plaintiff G.T." or "G.T.").  On October 21, 2002 at approximately 4:30 pm, Defendant David Anderson, a Blue Island Police Officer, received a report from a woman claiming she saw a child with no coat or shirt, being pulled in a wagon by a man.  (Pet'r Resp. Ex. A at 61, lines 10-11 and 14-15).[2]  Officer Anderson located and detained the man, who later identified himself as Trepanier.  Within the wagon, Officer Anderson observed a 2 year old child, later identified as G.T., covered in a blanket.  (Exhibit A to Defendant's Motion for Summary Judgment (hereinafter "Ex. A")  13; Comp. ¶¶ 12-14).  Officer Anderson called Defendant Corporal Frank Podbielniak who arrived to assist.  (Ex. A at 11; Comp. ¶¶ 17-18).  Corporal Podbielniak then uncovered G.T., who was nude.  (Ex. A at 39-40; Comp. ¶¶ 24-25).  Mr. Trepanier was arrested and charged with Contributing to the Neglect of a Child.  (Comp. ¶¶ 26, 33).  On April 30, 2003, in his motion to quash arrest and suppress evidence , Trepanier presented live testimony, photographic evidence, and oral argument.  The state court denied Trepanier's motion.

---

[1] Unless otherwise noted, the following facts are undisputed and derived from the parties' statements submitted pursuant to Local Rule 56.  For purposes of summary judgment, they are construed in Plaintiff's favor.
[2] There is some dispute as to what the woman reported.  Defendants cite to the testimony of Corporal Podbielniak, who stated that the child was "possibly naked" during the state suppression hearing.  (Def. Motion S.J. Ex. A at 8-10, line 61).  However, that dispute is inconsequential for the purposes of the issues at hand.

**LEGAL STANDARDS**

A. Summary Judgment

A party seeking summary judgment has the burden of showing that there are no genuine issues of material fact that would prevent judgment as a matter of law. Fed. R. Civ. P. 56. When reviewing a motion for summary judgment, the court will "view all facts and draw all inferences in the light most favorable to the non-moving party." *Chortek v. City of Milwaukee,* 356 F.3d 740, 745 (7th Cir. 2004). Once a summary judgment motion has been filed, the non-moving party must show through specific evidence that a triable issue of fact remains on issues it bears the burden of proof at trial. *Liu v. T & H Machine, Inc.,* 191 F.3d 790, 797 (7th Cir. 1999). A party must "present more than mere speculation or conjecture to defeat a summary judgment motion." *Sybron Transition Corp. v. Security Ins. Co. of Hartford,* 107 F.3d 1250, 1255 (7th Cir. 1997). Summary judgment is appropriate if the nonmoving party fails to establish the existence of an element essential to his case, one on which he would bear the burden of proof at trial. *Ortiz v. John O. Butler Co.,* 94 F.3d 1121, 1124 (7th Cir. 1996). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

B. Collateral Estoppel

The Defendant argues that summary judgment should be granted on Plaintiff's Claims I-V on the ground that each of the claims is barred by the principle of collateral estoppel. In assessing the preclusive effect of a state court judgment in a federal case, the district court applies the collateral estoppel principles of the state in which it sits. *Brokaw v. Weaver,* 305 F.3d 660, 669 (7th Cir. 2002) ("the preclusive effect of a state court judgment in a federal case is a

matter of state [law] rather than of federal law"). Under Illinois law, collateral estoppel requires that: (1) the issues decided in the prior adjudication are identical to issues presented for adjudication in the current proceeding; (2) there be a final judgment on the merits; and (3) the party against whom estoppel is asserted was a party or in privity with a party in the prior action. *Kalush v. Deluxe Corp.,* 171 F.3d 489, 493 (7th Cir. 1999). The person to be bound, whether a party or their privy, must have "had a full and fair opportunity to litigate" the issue, as well as an "incentive to vigorously litigate in the former proceeding." *Talarico v. Dunlap,* 177 Ill.2d 185, 685 N.E.2d 325, 328 (Ill. 1997).

**ANALYSIS**

A. Count I: Violation of Trepainer's Fourth Amendment Right

Defendants seeks to preclude Trepanier's Fourth Amendment claim under the doctrine of collateral estoppel. Defendants asserts that the state court determination that the police officers had probable cause to arrest Trepanier precludes him from relitigating the legality of his arrest in his civil case.

The Seventh Circuit has held that "[c]ollateral estoppel can be used to bar a § 1983 claimant from relitigating a Fourth Amendment search-and-seizure claim that he lost at a state suppression hearing." *Scott v. Sutker-Dermer,* 6 Fed. Appx. 448, 449 (7th Cir. 2001) (citing *Allen v. McCurry,* 449 U.S. 90 (1980)). Furthermore, several courts in this district have ruled that the foreclosure of an opportunity to appeal the denial of a motion to quash arrest does not preclude the application of collateral estoppel. *See, e.g., Wallace v. City of Chicago*, 2004 WL 2452728 (N.D. Ill. 2004); *Williams v. Valtierra*, 2001 WL 1263495 (N.D. Ill. 2001); *James v. Concepcion*, 1998 WL 729757 (N.D. Ill. 1998).

Trepanier disputes that the elements of collateral estoppel are satisfied, contending that the issues in the state suppression hearing are not identical to the issues under this claim because the trial judge did not conclude that the officers had probable cause to arrest Trepanier. Trepanier supports this claim by citing to the state judge's concluding comments:

> Did the officer, in his community care-taking obligations, did he have the right to make a further determination, particularly after making observations that a blanket has urine on it, he observes that the defendant has been drinking, and he observes five cans of beer within the wagon? Does he have – is it within his rights to be able to make that further determination?
>
> I rule that, in fact, he has that obligation and has that right.

(Ex. A at 84-85). Trepanier claims that the terms "community care-taking obligations" and "further determination" do not indicate a finding of probable cause, but reference what the Supreme Court of Illinois has labeled as the third tier of police-citizen encounters. In *People v. Murray*, the court laid out the three theoretical tiers of police-citizen encounters:

> One tier involves an arrest of a citizen, which action must be supported by probable cause; otherwise, the fourth amendment prohibition against unreasonable seizures is violated. The next tier involves a so-called "*Terry*" stop, a brief seizure that must be supported by a reasonable suspicion of criminal activity to be within acceptable fourth amendment boundaries. The last tier involves no coercion or detention and therefore does not involve a seizure. This tier is commonly known as the community caretaking function or public safety function.

137 Ill.2d at 387 (Ill. 1990) (internal citations omitted). Based on this language, Trepanier concluded that the state judge denied his motion to suppress without explicitly stating that his arrest was supported by probable cause. As such, Trepanier interprets the judge's "community care-taking obligations" language as an implicit rejection of probable cause, and claims that the judge's ruling as to the probable cause issue is "clearly uncertain." (Pet'r Resp. at 12).

Defendants contend that the trial judge decided the issue of probable cause against Trepanier and cite numerous comments made by the judge to that effect, including the following:

5

> We are attempting to do a motion to quash arrest in which you're attempting to determine whether this officer had probable cause to make an arrest for contributing to neglect of a child. If he did not have probable cause, your motion will be granted. If he did have probable cause, your motion would be denied. So the issue before the court is probable cause

(Ex. A at 28). Defendants argue that these comments clearly indicate that the purpose of the suppression hearing was to determine whether probable cause existed for Trepanier's arrest. Therefore, they contend that the trial judge necessarily found that the police officers had probable cause to arrest Trepanier since he ultimately denied his motion to quash arrest.

Defendants also argue that even if the trial judge applied the "third tier," collateral estoppel would still bar Trepanier's claim. They note that by definition, a third tier encounter does not involve a seizure. *Murray,* 137 Ill.2d at 387; *Luedemann*, 222 Ill.2d at 544. Therefore, they argue that if the state judge applied the third tier, he must have concluded that no seizure took place, thereby eliminating any Fourth Amendment claim.

All three elements of collateral estoppel are satisfied in this case. Trepanier only disputes that the issues in the state suppression hearing are identical to the issues in this action. The purpose of suppression hearings is to "screen out unreliable or illegally obtained evidence and insure that this evidence does not become known to the jury." *Gannett Co., Inc., v. DePasquale, etc., et al,* 443 U.S. 368, 378 (1979). To that end, Trepanier attempted to quash his arrest by showing that it lacked probable cause and, as such, was improperly executed. *See Henry v. United States*, 361 U.S. 98, 102 (1959). By denying Trepanier's motion to quash, the trial judge necessarily found that probable cause existed for Trepanier's arrest. Therefore, the first element of collateral estoppel is satisfied.

Trepanier has not provided any specific evidence to support his claim that the trial judge did not find probable cause for his arrest. Trepanier simply asserts that the judge's "community

care-taking" language coupled with the absence of the words "probable cause" in the judge's conclusion creates an ambiguity, which Trepanier interprets as an implicit rejection of probable cause. This claim must fail. By virtue of his arrest, Trepanier's encounter with the police fell within the first tier of police-citizen encounters. The third tier could only have applied had Trepanier not been arrested. Furthermore, notwithstanding the trial judge's "community care-taking" language, the trial judge repeatedly reiterated that the issue at hand in the suppression hearing was the existence of probable cause. Because this Court concludes that the trial judge did make a finding of probable cause, Defendants' other arguments need not be reached.

Regardless of whether the elements of collateral estoppel are satisfied, Trepanier argues that collateral estoppel is inapplicable under *Talarico* because the state court had not given him a full and fair opportunity to litigate his federal claims and had not clearly decided issues of fact or law related to his Fourth Amendment rights. The requirement that a party be given a full and fair opportunity to litigate a claim is satisfied "if the parties to the original action disputed the issue and the trier of fact resolved it." *Continental Can Co. v. Marshall,* 603 F.2d 590, 596 (7th Cir. 1979); *Innkeepers' Telemanagement and Equipment Corp. v. Hummert Management Group, Inc.,* 841 F.Supp. 241, 246 (N.D. Ill. 1993). Defendants correctly notes that a *pro se* party is given a full and fair opportunity to litigate his case when he is afforded the minimum procedural due process requirements. *Simpson v. Rowan,* 2004 WL 442682 at *6 (N.D. Ill. Mar. 9, 2004). Trepanier does not specify why applying collateral estoppel would be unfair and unjust, but merely indicates that "unique circumstances" make the application of collateral estoppel inappropriate. (Pet'r Resp. at 8).

Trepanier's contention is without support. Before beginning the hearing, Trepanier was furnished with duplicate copies of the complaint, police report, and motion, and was explained

7

the burden of proof by the state judge. (Ex. A at 2-6). Trepanier then disputed whether his arrest was supported by probable cause by questioning two police officers, and was allowed a break between each witness to collect his thought. (Ex. A at 7-57, 58-81). Trepanier made a closing argument in which he again argued that no probable cause existed for his arrest. (Ex. A at 81-84). After Trepanier questioned his witnesses and presented his argument, the state court judge resolved this issue by denying Trepanier's motion to quash his arrest and suppress evidence. (Ex. A at 84-85). Thus, this issue was fully and fairly litigated and was resolved by the judge.

The fact that Trepanier appeared *pro se* at his suppression hearing is not enough to indicate unfairness. *Simpson,* 2004 WL 442682 at *4. *Simpson* noted that a party's *pro se* status coupled with other circumstances, such as having insufficient preparation time or having a request for counsel denied, could result in unfairness. *Id.* at *4-5. Trepanier alleges neither of those circumstances. Indeed, the state judge admonished Trepanier as to his right to counsel, but Trepanier chose to proceed *pro se*. (Ex. A at 4-5).

The suppression hearing record establishes that Trepanier, who worked for a law firm at the time of this hearing, fully litigated his claim in an intelligent, articulate, and knowledgeable manner. Trepanier demonstrated an understanding of legal concepts such as credibility and hearsay. (Ex. A at 17, 30). He applied courtroom strategy by making a motion to strike testimony he felt was unresponsive and attempted to show that the officers' testimony was inconsistent during cross-examination. (Ex. A at 25, 17). Trepanier also followed proper courtroom procedures and rules as he marked seven photographs taken at the scene as exhibits, and properly used leading questions throughout the hearing. (Ex. A at 45, 47, 56). As such, Trepanier fully litigated the probable cause issue at the suppression hearing.

Finally, "a defendant in a criminal proceeding has ample incentive to fully litigate Fourth Amendment issues in the suppression hearing in hopes of excluding potentially damaging evidence." *Stevenson v. Johnson*, 638 F.Supp 136 136 (N.D. Ill. 1986). Defendants correctly note that Trepanier had an incentive to litigate the probable cause issue since a favorable ruling would mean that he would not have to stand trial or, at the very least, the evidence of his arrest would be suppressed. Therefore, Trepanier had a full and fair opportunity to litigate his Fourth Amendment issue and his second argument fails.

Because Trepanier's Fourth Amendment claim is estopped, the Defendants' motion for summary judgment on Count I is GRANTED.

B. Count IV: Malicious Prosecution

Defendants argue that Trepanier's malicious prosecution claim is barred by collateral estoppel as a result of the state court's finding of probable cause for arrest. "The existence of probable cause is a complete defense to a malicious prosecution claim under both Illinois and federal law." *Kies v. City of Aurora,* 156 F.Supp.2d 970, 981 (N.D. Ill. 2001); *Schertz v. Waupaca County,* 875 F.2d 578, 582 (7th Cir. 1989). Therefore, the denial of a motion to quash arrest and suppress evidence estops a malicious prosecution claim. *Arnold v. City of Chicago*, 776 F.Supp. 1259, 1263 (N.D. Ill. 1991).

Trepanier argues that collateral estoppel does not bar his malicious prosecution claim because the state court did not find probable cause for his arrest. However, as discussed with respect to Count I, this Court concludes that the state court did make a finding of probable cause in resolving the Plaintiff's motion to quash arrest. Trepanier's state law malicious prosecution claim is therefore estopped by the state court's finding of probable cause.

Accordingly, Defendants' motion for summary judgment as to Count IV is GRANTED.

C. Count II: Violation of Trepanier's First Amendment Right

To establish a prima facie case of First Amendment retaliation in the context of an arrest, a plaintiff must demonstrate that (1) his conduct was constitutionally protected; and (2) his conduct was a "substantial factor" or "motivating factor" in the defendant's challenged actions. *Abrams v. Walker*, 307 F.3d 650, 654 (7th Cir. 2002). A plaintiff need not prove but-for causation but must only show that his or her protected conduct was *a* factor, rather than *the* factor behind the defendant's actions. *Spiegla v. Hull*, 371 F.3d 928, 941-43 (7th Cir. 2004) (emphasis added). If this burden is met, the defendant must then show by a preponderance of the evidence that he would have taken the same actions even in the absence of the protected conduct. *See Thomsen v. Romeis,* 198 F.3d 1022, 1027 (7th Cir. 2000).

Defendants first contend that the existence of probable cause is a complete defense to a first amendment retaliation claim in the context of an arrest. Trepanier raises two arguments against Defendants' motion. First, Trepanier claims that the state court did not find probable cause at his criminal suppression hearing. As discussed above, this Court concludes that the state court did find that probable cause supported Trepanier's arrest. As such, Trepanier's first argument fails. Second, Trepanier notes that the Seventh Circuit has not concluded that probable cause is a complete defense to a retaliatory prosecution claim, and argues that summary judgment is therefore inappropriate.

The Seventh Circuit has not decided the issue of whether the existence of probable cause bars a claim of first amendment retaliation in the context of an arrest. *Abrams*, 307 F.3d at 657 (declining to address issue). Several circuits have required plaintiffs alleging retaliatory arrest to

show the absence of probable cause, see *Merkle v. Upper Dublin School Dist.*, 211 F.3d 782, 796-797 (3rd Cir. 2000); *Keenan v. Tejeda*, 290 F.3d 252, 260 (5th Cir. 2002); *Williams v. City of Carl Junction,* 480 F.3d 871, 876 (8th Cir. 2007); *Wood v. Kesler*, 323 F.3d 872, 883 (11th Cir. 2003), whereas other circuits have not burdened plaintiffs with this requirement, see *Poole v. County of Otero*, 271 F.3d 955, 961 (10th Cir. 2001); *Skoog v. County of Clackamas*, 469 F.3d 1221, 1235 (9th Cir. 2006).

Since the parties submitted their memoranda, the U.S. Supreme Court has concluded that a plaintiff must prove the absence of probable cause in a First Amendment *retaliatory prosecution* claim. *See Hartman v. Moore*, 547 U.S. 250, 126 S.Ct. 1695, L.Ed.2d 441 (2006). In *Hartman*, the Court indicated that the absence of probable cause element is justified by the need to prove a chain of causation connecting the retaliatory intent with the plaintiff's injury. *See id*. at 259. The Court distinguished retaliatory-prosecution claim from other retaliation claims, noting that "the causal connection required [in prosecution claims] is not merely between the retaliatory animus of one person and that person's own injurious action, but between the retaliatory animus of one person and the action of another." *Id.* at 263. As such, the absence of probable cause serves to "bridge the gap" between the non-prosecuting official's motive and the prosecutor's actions. *Id*. at 263.

District courts within the Seventh Circuit have differed on *Hartman*'s implications for retaliatory arrest claims. In *Gullick v. Ott,* the court drew a distinction between retaliatory prosecution, which was at issue in *Hartman*, and retaliatory arrest. 517 F.Supp.2d 1063 (W.D. Wis. 2007). The plaintiff in *Gullick,* who was detained and cited for public urination by the defendant-police officer, supported a different candidate for sheriff than did the defendant. After the district attorney dismissed the citation, the plaintiff sued the defendant for retaliation under

11

the First Amendment. The *Gullick* court ruled that the complex causation challenges described in *Hartman* were not implicated since no prosecutor was involved in the plaintiff's claim and since the named defendant was directly responsible for the plaintiff's alleged injuries. *Id*. at 1071. Furthermore, the court noted that several other courts have declined to extend *Hartman* to claims of retaliatory arrests. *See id*. at 1072. However, the court concluded with the caveat that a finding of probable cause "tends to undermine an allegation that the arrest was fabricated, just as the absence of probable cause is strong evidence that the officer's true motive for the arrest was an illegal one." *Id.*

In contrast, another court extended *Hartman* and concluded that a plaintiff bringing a First Amendment retaliatory arrest claim must show an absence of probable cause. *Baldauf v. Davidson*, 2007 WL 2156065 at *4 (S.D. Ind. July 24, 2007). *Baldauf* involved an alleged verbal and physical confrontation between a plaintiff and a police officer. The police officer released the plaintiff, only to arrest her moments after he allegedly heard her state that she would file a complaint against him. *See id* at *1. The court concluded that a plaintiff must prove an absence of probable cause in both retaliatory arrest and retaliatory prosecution claims for several reasons. First, it found that the distinction between a retaliatory prosecution and a retaliatory arrest claim was artificial since an arrest is the first step in a prosecution, and the plaintiff, in essence, claims retaliatory prosecution when his injuries stem from the filing of charges. *See id*. at *3. Second, the court noted that a retaliatory arrest claim, to the extent that it is based upon seizure of a plaintiff's person, is similar to a traditional Fourth Amendment claim, which is barred by a finding of probable cause. *See id*. Third, although the court acknowledged that the imposition of a probable cause element would preclude otherwise worthy claims in rare cases, it reasoned that the absence of such a requirement would enable plaintiffs to bring Fourth

12

Amendment claims that would otherwise be dismissed by characterizing them as First Amendment retaliation claims. *See id.* at *4.

This Court concludes that the existence of probable cause bars a retaliation claim when, as here, the claim stems from the filing of charges. Trepanier claims that he was only charged after another officer recognized him from a previous complaint and lawsuit. (Comp. ¶¶ 53-54) *Baldauf* held that the filing of charges is essentially the first step in a prosecution, and should therefore be barred by a finding of probable cause under *Hartman*. If probable cause existed, the subjective motivation for the arrest is irrelevant.

Furthermore, previous statements of the Seventh Circuit indicate that it is likely to hold that the existence of probable cause is a complete defense to a First Amendment retaliatory arrest claim. *See Schertz v. Waupaca County*, 875 F.2d 578, 582 (7th Cir. 1989) ("*[R]egardless of the defendant's motives toward the plaintiff*, the existence of probable cause for arrest is an absolute bar to a section 1983 claim for unlawful arrest, false imprisonment, or malicious prosecution.") (emphasis added); *Mark v. Furay*, 769 F.2d 1266, 1268 (7th Cir. 1985) ("This court has consistently held that the existence of probable cause for an arrest totally precludes any §1983 claim for unlawful arrest, false imprisonment, or malicious prosecution, regardless of whether the defendants had malicious motives for arresting the plaintiff."); *cf. Abrams v. Walker*, 307 F.3d 657 (noting that a complete defense of probable cause to First Amendment retaliation claims is not incongruous with the court's affirmation of probable cause as a complete defense to Fourth Amendment false arrest claims).

Therefore, Defendants' motion for summary judgment as to Count II is GRANTED.

D. Count III: Violation of G.T.'s Fourth Amendment Right

Defendants argue that summary judgment is appropriate as to Count III because G.T. is in privity with Trepanier and collateral estoppel consequently bars G.T.'s claim. However, as explained below, the issue of the Plaintiffs' privity is moot because the prior decision of the Seventh Circuit only requires that the Defendants' actions were reasonable. Because the actions the officers with respect to G.T. were indeed reasonable, Defendants' motion for summary judgment on Count III is granted and their privity argument need not be reached.

The Seventh Circuit has previously determined that probable cause is not required for the visual inspection of a child suspected to be the victim of abuse. *See Darryl H. v. Gregory Coler*, 801 F.2d 893, 902 (7th Cir. 1986). Such a search need only meet the test of reasonableness under the Fourth Amendment, which inquires: (1) whether the action was "justified at its inception," and (2) whether the conduct of the search was "reasonably related in scope to the circumstances which justified the interference in the first place." *See id.* at 903, *quoting Terry v. Ohio*, 392 U.S. 1, 19-20 (1968). Furthermore, when exigent circumstances exist, a search may constitutionally be conducted. *See id.* at n.8.

Both criteria are satisfied here. The officers' actions were justified at the inception because they had a responsibility to investigate the report received earlier that evening and to conduct an examination of G.T. based upon what was observed. Furthermore, the conduct of the search was reasonably related in scope to the report received by Officer Andersen as well as the behavior he observed upon encountering Trepanier. Officer Andersen was told that the Plaintiff's child had no shirt or jacket. The officers' search merely involved lifting G.T.'s blanket in order to determine if she was clothed underneath and properly protected from the elements. (Ex. A. at 40-41). The officers' actions were limited in intrusiveness and entirely

14

appropriate given the earlier report that the child was naked. Additionally, the officers' conduct in taking photographs of G.T. was reasonable given the state in which they found her and their need to preserve evidence. The officers testified at the state hearing that when they came upon the Plaintiffs, G.T. was being pulled in a wagon while naked on a 53 degree day. Furthermore, one of the blankets in which she was wrapped was soiled. (Ex. A at 30-31). The officers also observed four or five closed cans of beer inside the wagon, and smelled alcohol on Trepanier's breath. (Ex. A at 35). As the trial judge concluded, not only did the officers have the right to examine G.T., they had an obligation to do so given the state in which she was found. (Ex. A at 85). The officers reasonably concluded that the circumstances were sufficiently exigent to warrant their intervention. Therefore, the officers' conduct with respect to G.T. met the standards of the Fourth Amendment.

Accordingly, Defendants' motion for summary judgment as to Count III is GRANTED.

E. Count V: Wrongful Invasion of G.T.'s Privacy

Defendants make three arguments in support of summary judgment on Count V, considered in turn, stating: (1) that the Illinois Supreme Court has not expressly recognized the tort of unreasonable intrusion upon the seclusion of another, (2) the claim is estopped because G.T. is in privity with Trepanier, and (3) Trepanier improperly pled that the officers' actions were conducted in a willful and wanton manner as required by the Illinois Tort Immunity Act. As explained below, we need not reach Defendants' latter two arguments. Although we conclude that the tort of unreasonable intrusion is recognized in Illinois, the Plaintiffs cannot prevail on the facts as alleged.

Defendants first note that the Illlinois Supreme Court has not expressly recognized the tort of unreasonable intrusion upon the seclusion of another. *Mylnek v. Household Finance*, 2000 WL 1310666 *2 (N.D.Ill. 2000), *citing Lovgren v. Citizens First Nat'l Bank*, 126 Ill.2d 411, 416-18 (Ill. 1989). However, they overlook the fact that many Illinois appellate courts have recognized it. *See id.* Furthermore, the Seventh Circuit has noted that the tort is "generally recognized," though it declined to state how it thought the Illinois Supreme Court would rule on the issue. *Muick v. Glenayre Elecs.*, 280 F.3d 741, 743 (7th Cir. 2002).

Given the lack of clarity on this issue, this Court has previously recognized the tort after surveying Illinois cases and cases from other states in order to predict how the Illinois Supreme Court would resolve the issue. *See Abbott v. Village of Winthrop Harbor*, 1995 WL 51553, *10 (N.D. Ill. Feb. 4, 1995). Since *Abbott*, additional Illinois appellate courts have recognized the tort of unreasonable intrusion upon the seclusion of others. *See Johnson v. K Mart Corp.,* 311 Ill.App.3d 573, 578 (Ill. App. 1 Dist. 2000); *Benitez v. KFC Nat'l Mgmt. Co.,* 305 Ill.App.3d 1027, 1033 (Ill. App. 2 Dist. 1999). Therefore, this Court affirms its prior conclusion that the Illinois Supreme Court would recognize the tort of intrusion into seclusion.

The elements that a plaintiff must plead and prove to state a cause of action for intrusion upon seclusion are: (1) an unauthorized intrusion upon seclusion; (2) an intrusion that is offensive to a reasonable person; (3) the matter upon which intrusion occurs is private; and (4) the intrusion causes anguish and suffering. *Minter v. AAA Cook County Consolidation, Inc.*, 2004 WL 1630781 *7 (N.D. Ill 2004); *Mylnek*, 2000 WL 1310666 *3. However, Trepanier cannot meet the first element. As noted with respect to Count III, the officers were fully authorized to investigate G.T.'s well-being by undertaking the minimally intrusive actions alleged. Therefore, the Plaintiffs' claim fails and the Court need not reach the Defendants'

remaining arguments.

For this reason, Defendants' motion for summary judgment as to Count V is GRANTED.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED in full.

Enter:

/s/ David H. Coar

_____
David H. Coar
United States District Judge

Dated: **September 29, 2008**